IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MICHAEL MCDONALD, et al.,<br><br>   Plaintiffs,<br><br>vs.<br><br>BEKO ASSOCIATES, INC., a Utah Corporation,<br><br>   Defendant. | ORDER and MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:08-CV-00328 CW |

Plaintiffs, trustees of various trust funds for union employees, brought this action against BEKO Associates, Inc., an employer, for delinquent monthly benefit payments. Now before the court is Plaintiffs' motion for summary judgement for employee benefit plan contributions in the amount of $101,208.84 and a request for an order compelling BEKO to submit to an audit of its books and records. Plaintiffs presented reports submitted by BEKO of hours of covered work performed by employees as prima facie evidence of the amount owed. In response, Defendant offered only conclusory statements void of any specific facts. Moreover, even taking Defendant's statements as true, Defendant has not shown that they are material to the issue raised in this motion. Accordingly, summary judgement is GRANTED in favor of Plaintiffs.

**BACKGROUND**

Plaintiffs are union employees and trustees seeking to collect monthly employee benefit

plan contributions from BEKO. BEKO was to make those payments in accordance with the terms and provisions of certain labor agreements, trust agreements, and Section 515 of ERISA, 29 U.S.C. § 1145. Section § 1145 states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (2008).

BEKO is a structural steel company. On December 22, 2006, BEKO executed a Compliance Agreement ("Agreement") with Local Union 27 of the International Association of Bridge, Structural, Ornamental and Reinforcing Ironworkers. The Agreement referred to the union's collective bargaining agreement ("CBA"). Under the terms of the Agreement, BEKO was obligated to submit monthly fringe-benefit reports to Plaintiffs' trust funds and to pay fringe-benefit contributions to the trust funds for all employees who performed covered work in accordance with the full CBA.[1] BEKO submitted monthly employer contribution reports to the trust funds during the period of July 2007 through November 2007 without including contribution payments. BEKO claims that after submitting the reports, Beatrix Koev, an officer of the company, discovered that the employees had made false and inaccurate representations. BEKO now disputes the number of hours of covered work for which it is required to make contributions. BEKO doesn't deny that it submitted the reports, but argues that it should not be bound by the amounts included in those reports because it relied upon the employees to provide the information which BEKO now claims is false.

---

[1] *See* Plaintiff's Memo in Support, Docket No. 28, Exhibit A.

Plaintiffs assert BEKO owes them past due contributions commencing July 2007 through November 2007, as well as interest, liquidated damages, costs and attorneys' fees. The current motion for partial summary judgment seeks the employee benefit plan contributions of $101,208.84 based on the hours stated in the employer contribution reports submitted by BEKO.

## LEGAL STANDARD

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Faustin v. City & County of Denver, Colo., 423 F.3d 1192, 1198 (10th Cir. 2005) (citations and internal quotation marks omitted). See also Fed R. Civ. P. 56(c). "A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented." Chasteen v. UNISIA JECS Corp., 216 F.3d 1212, 1216 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "nonmoving party must, at a minimum, direct the court to facts which establish a genuine issue for trial. In the face of a properly supported motion for summary judgment, the nonmoving party may not rely upon unsupported allegations without 'any significant probative evidence tending to support the complaint.'" White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986)), see also Fed R. Civ. P. 56(e).

## ANALYSIS

I.  **Contributions**

BEKO contends that the employer contribution reports it submitted between July 2007 through November 2007 do not accurately set forth the number of hours of covered work. In support of this assertion BEKO submits an affidavit by Beatrix Koev, which states: "I discovered that the employees provided to Defendant by the Union did not perform the work requested of them by BEKO and that the representations made to Defendant concerning the work actually performed were false and inaccurate."[2] BEKO has not clearly stated nor provided sufficient facts to determine whether the issue is a misrepresentation in hours or a deficiency in performance.

Although the Tenth Circuit has not interpreted or applied § 515, that court has stated its agreement with other circuits that ERISA limits defenses available to employers. Trustees of Colo. Tile, Marble & Terrazzo Workers Pension Fund v. Wilkinson & Co., Nos. 96-1205, 96-1431, 1998WL 43172 (10th Cir. 1997)(unpublished)(citing Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997). The Tenth Circuit has not addressed the issue of whether it matters if workers actually worked for the number of hours for which they were paid. The Sixth Circuit, however, has addressed this question directly and held that when workers are paid for time in which they did not perform labor, the issue is only material if the terms of the applicable collective bargaining agreement tie the amount of the contribution to hours actually worked rather than hours for which the employees were paid. Trustees of Detroit Carpenters Health & Welfare Fund v. River City

---

[2] Affidavit of Beatrix Koev, Docket No. 43-2, ¶6.

Constr. Co., 99 Fed. Appx. 612 (6th Cir. 2004).  To prove that an assessment of hours worked differed from an hours paid calculation, defendant in that case offered the affidavit of the company's president stating that the company paid union employees for time when they did not perform work. The court responded:

> But this fact is material only if the terms of the CBA support [defendants] contention that the amount of its fringe-benefit contribution is a function of the number of hours the Union employees worked, rather than the number of hours [defendant] paid them for working.

Id. at 614.

The court examined the collective bargaining agreement at issue there and concluded that because the parties did not distinguish between unproductive and productive hours at the work sites, "'each hour worked' included those hours for which [defendant] paid union employees, including the hours [defendant] views as non-working hours." Id.  The Sixth Circuit found defendant "liable for contributions on all hours worked during a period in which it has been demonstrated that some covered work was performed." Id., quoting Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 697 (6th Cir. 1994).  The court also determined that in the absence of evidence from defendant demonstrating the actual hours union employees worked, the auditor's report was sufficient proof of the contributions owed to warrant summary judgment in these amounts:

> ... an employer cannot escape liability for his failure to pay his employees the wages and benefits due to them under the law by hiding behind his failure to keep records as statutorily required.

Id. at 615, citing Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc., 30 F.3d 692, 697 (6th Cir. 1994).

Here, BEKO paid the wages of employees in accordance with the hours recorded in the employer contribution reports. In the context of this motion, BEKO's burden required it to show that the terms of the CBA support an argument that "hours paid" is not the appropriate calculation. BEKO admits that a representative of BEKO signed a Compliance Agreement binding Defendant to comply with the CBA.[3] Both parties admit the CBA requires BEKO to make payments for hours of covered work performed. The reports submitted by BEKO consist of a representation that work performed constituted covered work. Employees performed covered work during the period in question and BEKO submitted no evidence that makes a distinction between working and non-working hours. BEKO paid the employees according to the reports it created and submitted. By submitting the reports to the trustees and making payment for the hours included in those reports, BEKO accepted their accuracy. BEKO cannot now challenge the accuracy of the information when it relied upon its employees to provide the information included in the reports. Accordingly, BEKO is required to make contributions for all hours reported. BEKO's defense is thus invalid under ERISA, and the issue it raises about performance is immaterial.[4]

Even if the CBA supported BEKO, Ms. Koev's affidavit would not create a dispute of material fact. Simply put, Ms. Koev's affidavit contains insufficient facts to create a genuine

---

[3] Responses of Defendant BEKO Associates, Inc. to Plaintiffs' First Request for Admissions, Docket No. 28, Exhibit B.

[4] BEKO also asserts that because the workers provided by the representative union initially breached their agreement to provide the required work, BEKO is relieved of obligation to make any payments for work not performed. Traditional contract law does not fully apply under ERISA and the breach of one party does not relieve liability. Southern Ca. Retail Clerks Union v. Bjorklund, 728 F.2d. 1262, 1265 (9th Cir. 1984).

issue. An affidavit must set forth facts, not conclusory statements, to raise a question of material fact at summary judgment. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). Ms. Koev's testimony does not discuss why the hours are claimed to have been over-reported, the number of hours she claims to have been over-reported, or how the fraudulent reporting became known. It is impossible to determine from her affidavit whether she claims the employees did not work the hours reported or worked the hours but simply did not accomplish as much work as BEKO believed they should have. Because Ms. Koev's testimony alleging fraud and inaccuracy without providing factual support constitutes unsubstantiated conclusory allegations, it does not create an issue of fact sufficient to resist summary judgment. Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996), see also Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003).

**II.     Audit**

Plaintiff employees seek an order compelling BEKO to submit to an audit of its books and records for the period of September 2007 to the present. Article IV Section 5 of the Trust Agreement provides the Plaintiffs with a right to audit the books and records of any contributing employer to determine compliance with its obligation to report and pay trust fund contributions.[5] The right of ERISA employee benefit plans to compel such audits has been recognized. May v. Parker-Abbott Transfer & Storage, Inc., 899 F.2d 1007 (10th Cir. 1990). BEKO acknowledges that the Trust Agreement allows for an audit and, at oral argument, stated that it does not disagree to an audit. An audit is an independent remedy under ERISA and the question of whether it

---

[5] Affidavit of Jolene Severson, Docket No. 27, Exhibit C.

should be granted is straightforward in the affirmative. Accordingly, BEKO must submit to an audit.

## ORDER

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 26) is GRANTED.

SO ORDERED this 21st day of May, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Judge